[Civ. No. 1142. Fourth Appellate District.—September 25, 1934.]

In the Matter of the Estate of LOUIS V. OLCESE, Deceased. OLCESE KRAMER, Appellant, v. JENNIE CAUZZA et al., Administrators, etc., Respondents.

Edwin H. Williams and Rowen Irwin for Appellant.

W. H. Metson, Preston & Braucht and Borton & Petrini for Respondents.

Harvey & Johnson and Alfred H. McAdoo, as *Amici Curiae* on Behalf of Respondents.

JENNINGS, J.—This is an appeal from an order of the Superior Court of Kern County settling and approving a special account of the administrators of the estate of Louis V. Olcese, deceased. The account, which covered the period from December 6, 1932, to March 31, 1933, was filed on April 29, 1933. Thereafter on May 15, 1933, Olcese Kramer filed written objections to said account. The account and the objections thereto came on for hearing on May 15, 1933. At this hearing evidence consisting of the oral testimony of witnesses and documentary evidence was submitted to the court. Upon the conclusion of the hearing the court made its order overruling and disallowing the objections and settling and approving the account. Thereupon the above-mentioned objector prosecuted this appeal from the aforesaid order.

The principal ground of the objections relates to the allowance by the court of the sum of $10,484.12 as fees of a prior administrator of the estate and the disposition of this compensation by such administrator. Upon the death of Louis V. Olcese, the Bank of Italy National Trust and Savings Association was appointed administrator of his estate and thereupon proceeded to administer it. An appeal was taken from the order of the superior court appointing the bank administrator by Victor Olcese, a brother of the deceased. The appeal was successful and the order of appointment

was reversed by the Supreme Court (*Estate of Olcese*, 210 Cal. 262 [291 Pac. 193]). After the appeal was taken the bank was appointed special administrator and during the pendency of the appeal it continued to act as special administrator. Upon the reversal of the order of appointment three new administrators of the estate were appointed. These new administrators qualified as special administrators in January, 1931, and as general administrators in May, 1931. In the meantime some questions had arisen as to the respective rights and liabilities of the bank and the estate with respect to the former's conduct of the administration of the estate. In August, 1931, the bank filed its final account as administrator. After the rendition of this account the bank filed claims against the estate the total amount of which was more than $300,000. These claims covered the amount of disbursements from funds of the estate made by the bank during the time that it acted as administrator. In this state of affairs, negotiations were undertaken between the bank and the new administrators which were carried on for several months and which finally culminated in the execution of an agreement which is denominated in the briefs of counsel the "ratification agreement". The purpose of this agreement was the ratification by all parties interested in the estate of all acts performed and proceedings taken by the bank in its administration of the estate. In this agreement specific reference was made to the final account of the bank as administrator and certain items of expense included therein were expressly eliminated. With the exception of such items it was provided that "in all other respects said account may be settled, allowed, and approved". Thereafter on January 13, 1932, the final account of the bank was duly allowed and approved. The court's order approving the account specified "that the administration of said estate conducted by said Bank of Italy National Trust and Savings Association is equal to ¾ths of the entire labor of administering said estate and that the estimated amount of entire statutory fees and commissions of the administrators and attorneys is $13,978.83 for the administrator and $13,978.83 for the attorneys of which sum ¾ths amounting to the sum of $10,484.12 is hereby fixed and allowed to said Bank of America National Trust and Savings Association, formerly Bank of Italy

National Trust and Savings Association, as its compensation for its service in administering said estate". The order further provided that upon deduction of the items of the account expressly disallowed and the payment of the fees specifically allowed as compensation to the administrator and the attorneys the entire balance of the estate should be delivered to the new administrators by the bank and upon the filing of their receipt therefor the bank should be discharged from all further liability in the matter of the estate. On January 30, 1932, all persons interested in the estate, including Olcese Kramer and his attorneys, executed and caused to be filed in the Superior Court of Kern County a waiver of any right of appeal from the above-mentioned order approving the account of the bank as administrator and a stipulation that the same should immediately become final. Thereafter the Bank of America delivered and paid over to the new administrators of the estate all property and assets of the estate which remained in its possession. The new administrators then filed their first annual account covering the period from the date of their appointment on June 12, 1931, to and including the 21st of May, 1932. This account was approved and settled by the court on July 11, 1932. A special account covering receipts and disbursements for the period intervening between May 22, 1932, and December 5, 1932, was filed by these administrators on December 29, 1932. Objections to this account were filed by Olcese Kramer on January 9, 1933, and after a hearing upon the account and the objections thereto the court made its order overruling and disallowing the objections and approving the account on February 16, 1933. An appeal was duly taken by Olcese Kramer from this order which will receive consideration in another opinion (*ante,* p. 72 [36 Pac. (2d) 215]). Thereafter, the new administrators of the estate filed the special account of receipts and disbursements whose approval forms the basis for the present appeal.

Upon the hearing of this last account and of the objections presented thereto, evidence was produced which showed that at some time during the autumn of 1931 all persons who were interested in the estate, including the Bank of Italy and its successor, the Bank of America, the new administrators, and the various attorneys who represented the new administrators, with the exception of appellant and his

counsel, entered into an agreement which provided that all fees which might thereafter be allowed and paid to administrators and attorneys for services rendered subsequent to August 20, 1929, should be added and that the total amount of such fees should be divided equally among three different firms of attorneys, two of which firms had represented persons interested in the estate other than appellant and the third firm had acted as attorneys for the bank. The evidence also showed that pursuant to the above-mentioned agreement and after its final account had been approved and the order of January 13, 1932, had been made allowing fees in the amount of $10,484.12 to the Bank of America as compensation for its services as administrator of the estate, the bank turned over the aforesaid sum so allowed to the attorneys mentioned in the fee division agreement and each of the three firms of attorneys thereupon received one-third of said sum. The evidence also showed that neither the appellant nor his counsel had any knowledge of the existence of the fee division agreement or of the payment by the Bank of America to the three firms of attorneys specified in such agreement of the amount allowed to it as compensation for its services as administrator until the fee division agreement was read in court at the time of the hearing of the account and appellant's objections thereto.

It is appellant's contention that he was entitled to object to the division of the fees allowed to the bank as administrator among the three firms of attorneys and that the probate court on the showing made should have ordered the aforesaid sum of $10,484.12 to be repaid to the estate on the theory that payment of said sum was made to the persons who received it in trust for the estate. It is argued that the right of the Bank of America to receive any compensation for its services as administrator of the estate was questionable, due to the fact that the court's order appointing the bank general administrator was reversed on appeal and the order appointing the bank special administrator was declared void and annulled for lack of notice. (*Olcese* v. *Superior Court*, 210 Cal. 566 [292 Pac. 964].) It is pointed out that the abortive attempt to make the bank administrator involved the estate in numerous difficulties and that as a result of such attempt serious questions arose as to the legality of its actions during the time that it acted as

administrator. In particular it is said that the bank's right, under the circumstances, to charge the estate with the disbursements made by it during its tenure of office as administrator was doubtful. It is then urged that the bank, occupying a doubtful position both with respect to its right to charge the estate with the amount of disbursements made by it as administrator and with respect to its right to receive any compensation for its services as administrator, bargained with the new administrators and with their attorneys and by means of the secret fee division agreement secured their approval of the ratification agreement whereby all parties interested in the estate expressly ratified all acts performed by the bank as administrator and with some few exceptions consented to the allowance and approval of the bank's final account *in toto*. It is urged that the attorneys who were the recipients of the bank's generosity, all of whom acted as attorneys for the new administrators, were thus enabled to receive fees in excess of the fees expressly permitted by statute and that the result of the transaction was that they were thereby permitted to make a secret profit at the expense of the estate. It is said that the facts surrounding the execution of the fee division agreement and the final accomplishment of its provisions showed that extrinsic fraud was perpetrated upon the court in securing its approval of the bank's final account as administrator and in procuring the order providing for the payment of specified fees to the bank and to its attorneys.

Assuming, without here deciding, that appellant's criticism is justified and that the making of the fee division agreement and its accomplishment had the effect which appellant maintains and that the estate should be reimbursed in the above-mentioned amount, it is nevertheless manifest that it is impossible to sustain appellant's contention in accordance with the rules established in probate procedure. The situation which the record discloses is that we here have objections presented to a special account rendered by the administrators of an estate. These objections do not, however, attack any item of disbursement mentioned in the account. More than that the objections do not even attack the order which had allowed specified fees to the Bank of America for its services as a prior administrator of the estate and which had become final long before the account to which

appellant's present objections were filed was rendered. Appellant evidently recognizes the obvious impossibility of attacking this prior order for he specifically asserts that he is not attacking it. He maintains that he is attacking the "transaction whereby the bank assigned these fees to the attorneys for the administrators". In this connection it is pointed out that the assignment was not before the court either on the hearing of the bank's final account or at the time the order allowing fees to the bank was made. It is urged, therefore, that there was not any adjudication of the matter and that the facts upon which the objection is based were presented for the first time at the hearing of the account of the new administrators and appellant's objections thereto.

It may be conceded that the fee assignment transaction was not before the court on the hearing of the final account rendered by the bank as administrator of the estate and that there was therefore no adjudication of the matter. It may further be assumed for the purposes of this decision that the facts shown by the evidence indicated that the transaction whereby the attorneys to whom the bank assigned its fees were thus permitted to receive fees in excess of the compensation allowed by statute was an improper transaction. Nevertheless, it does not follow therefrom that the disallowance of appellants' objections and the approval and settlement of the account to which these objections were presented were erroneous. The account which was before the court was one that was rendered by different administrators than the one which had assigned its fees. It was a special account of these new administrators wherein they declared that they had received certain sums of money and had made specified disbursements during a definite limited period of time and charged themselves with the possession of a specified balance. The matter of the assignment of fees by a prior administrator was not mentioned in the account and could have no place in it. It was not material to the account nor was it incidental to it. Appellant's attack upon the fee division agreement, although it was presented in the form of objections to the account, was not an attack upon the account. The court was not therefore justified in withholding its approval of the account for the reasons stated in the objections. As a matter of fact appellant's attack

was not directed to the final account rendered by the bank as prior administrator of the estate nor to the court's order which approved that account and allowed to the bank a definite sum for its services as administrator. In this connection it is to be remembered that appellant and his counsel were parties to the "ratification" agreement whereby it was expressly provided that "all the parties hereto do hereby ratify, confirm, and approve the entire administration of said estate heretofore conducted by said Bank and adopt the same as and for acts, omissions, and proceedings taken in behalf of and for the benefit of the heirs and persons interested therein". We do not understand that it is now claimed that the amount allowed to the bank as compensation for its services as administrator was in excess of the fees which it was legally entitled to receive therefor. It is suggested that the bank's claim to receive any compensation as administrator was doubtful by reason of the fact that the order of its appointment was reversed on appeal. The fact remains, nevertheless, that more than a year after the reversal was accomplished appellant and his counsel entered into the ratification agreement whereby they specifically ratified, confirmed and approved the entire administration of the estate by the bank, and with the exception of certain specified items agreed that the bank's account as administrator should be settled, allowed and approved. Furthermore, after the bank's account had been approved and settled and an allowance had been made to the administrator of a specified amount for its services as administrator, appellant and his counsel joined in a written waiver of any right to appeal from the order approving the account and allowing fees and in a stipulation that the order might become immediately final.

It appears, therefore, that appellant's attack presented in the form of objections to the special account of the new administrators is in reality not an attack upon any account rendered either by the present administrators nor by the former administrator and that it is not an attack upon the order allowing fees to the former administrator. It is an attack upon the agreement whereby the former administrator assigned its fees to the attorneys who represent the present administrators of the estate. It may be that appellant is entitled to attack this assignment on the

grounds specified by him in some appropriate action. As to this we here express no opinion. That it may not properly be done in the manner which is here attempted we think is obvious.

The order from which this appeal has been taken is therefore affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 22, 1934.