[Civ. No. 5366.   Third Appellate District.—November 1, 1935.]

BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a Corporation), as Guardian, etc., Plaintiff and Respondent, v. FIDELITY & DEPOSIT COMPANY OF MARYLAND (a Corporation), Appellant; G. WILSON et al., Cross-Defendants and Respondents.

Thomas E. Davis for Appellant.

Wilson & Edson and Huston, Huston & Huston for Cross-defendants and Respondents.

THOMPSON, J.—The defendant, Fidelity & Deposit Company of Maryland, has appealed from a judgment which was rendered in favor of the cross-defendants, G. Wilson and F. B. Edson, in a suit on guardianship bonds against the sureties on account of the misappropriation of the funds of the estate by the former guardian of an incompetent person.

William Barlow was appointed guardian of the estate of Elmer J. Barlow, an incompetent person, April 19, 1926. Pursuant to an order of the probate court he filed a guardianship bond in the sum of $2,000 with the cross-defendants Wilson and Edson as sureties thereon. In October, 1928, William Barlow filed his first annual account for settlement and alleged that the bond was insufficient to cover the money in his hands belonging to the estate, asking that the court "fix the amount of such new or additional bond as the court may require". The account was settled and the court made its order that the guardian "give a new bond in the sum of $2,000, surety or $4,000 personal". The former bondsmen were not discharged. The appellant, Fidelity & Deposit Company, filed the new bond for $2,000. William Barlow resigned as guardian May 23, 1932. The plaintiff was thereupon appointed guardian of the estate of the incompetent person. On subsequent showing it was determined that the former guardian, William Barlow, had misappropriated funds of the estate after the appointment of the new guardian, amounting to the sum of $1758.30. This suit was commenced against the Fidelity & Deposit Company of Maryland, alone, as surety for the recovery of the amount of the misappropriated money. Upon petition and proceedings duly had it was ordered that the respondents G. Wilson and F. B. Edson, as bondsmen in the guardianship matter be made parties defendant in this action, and that the appellant be permitted to file a cross-complaint against them as cosureties on the guardianship bonds. The respondents failed to demur on the ground of misjoinder of parties defendants. They answered the cross-complaint without suggesting that they were

improperly joined as defendants. The respondents, Wilson and Edson, affirmatively alleged that they had been discharged as sureties on their bond. Moreover, they answered the cross-complaint on the assumption that their asserted liability on the guardianship bond was a proper issue to be determined, and the case was tried on that theory. Findings were adopted favorable to the respondents. It was determined that the cross-defendants had been discharged of their liability on their guardianship bond; that they were not indebted to the estate, and that the appellant take nothing by its cross-complaint. A judgment was accordingly rendered in favor of the cross-defendants and against the Fidelity & Deposit Company of Maryland for the sum of $1758.30. From this judgment the surety company has appealed.

The appellant concedes its liability on the bond for the payment of the judgment, but contends that the court erred in finding that the cross-defendants Wilson and Edson were not also liable on their bond and asserts that it is entitled to have their liability as cosureties determined so that when the surety company pays the judgment it may enforce contribution of their lawful proportion thereof. On the contrary the respondents insist that the cross-defendants were wrongfully made parties to the action; that they are not liable on their bond for the reason that they were discharged from their obligation, and that the appellant is not entitled to contribution until it has first satisfied the judgment.

We are of the opinion the cross-defendants, Wilson and Edson, were not necessary party defendants in this suit, but assuming that the plaintiff had the option to bring this suit against only one of several cosureties, the codefendants were *proper* parties for the purpose of determining whether they were cosureties and therefore obligated to contribute to the liability represented by the bonds. Section 379a of the Code of Civil Procedure, which was adopted in 1927, provides that:

"All persons may be joined as defendants against whom the right to any relief is alleged to exist, whether jointly, severally or in the alternative; and judgments may be given against such one or more of the defendants as may be found to be liable, according to their respective liabilities."

It is true that the complaint failed to allege that Wilson and Edson were liable on their bond as cosureties,

but the court authorized the appellant to file a cross-complaint in which it was specifically so alleged, and the cross-defendants failed to demur on that ground. On the contrary, they conceded their liability to be a proper issue to be determined in this suit by failing to demur to the cross-complaint on the ground of misjoinder of party defendants and by answering that pleading and trying the cause on the theory that it was a proper issue to be determined. (*Kunz* v. *California Trona Co.*, 169 Cal. 353 [146 Pac. 885]; *Busset* v. *California Builders Co.*, 123 Cal. App. 657, 664 [12 Pac. (2d) 36].) In the case last cited it is said: "Any objection on the ground of misjoinder should have been raised by demurrer." Moreover, the cross-defendants are not permitted to raise on appeal for the first time the asserted error of the trial court in authorizing them to be made party defendants for they not only tacitly consented thereto, but they have not appealed from the judgment. (*Rapp* v. *Southern Service Co.*, 116 Cal. App. 699, 708 [4 Pac. (2d) 195]; *Hudgins* v. *Standard Oil Co.*, 136 Cal. App. 44 [28 Pac. (2d) 433].) In the Rapp case, *supra*, it is said in that regard:

"It is the general rule that a respondent in whose favor a judgment is rendered . . . cannot on an appeal of the opposite party ask a court of review to consider any errors against him."

This appeal does not raise the question of the proper procedure of enforcing contribution against cosureties. The appellant concedes that it is primarily liable under its bond for the full amount of the judgment, but it is insisted that the cross-defendants were properly joined as defendants in the action and that the court erred in specifically finding that they were not liable for any part of the obligation at any time or under any circumstances. It is true that neither surety would be entitled to contribution against other cosureties until he had first satisfied the obligation. (Sec. 2848, Civ. Code.) But since they were made party defendants in the suit and the issue of their liability was tried by all parties without objection, this judgment will become *res judicata* of that issue and the appellant will be denied the lawful right to enforce contribution against them even after the obligation has been fully paid by it. This would defeat justice provided the cross-defendants are liable under the provisions of

their bond. (*Todhunter* v. *Smith,* 219 Cal. 690 [28 Pac. (2d) 916].)

We are persuaded the court erred in determining that the cross-defendants were discharged from their liability on their guardianship bond, and that there is no evidence to support the finding in that regard. It is not a question of what the court intended to do regarding the discharge of the cross-defendants, but rather what a reasonable construction of the record discloses that the court actually did or was authorized to do in that regard.

There is no conflict of evidence with respect to the court record. May 11, 1926, a guardianship bond was filed in the *Estate of Elmer J. Barlow,* an incompetent person, in the sum of $2,000. The cross-defendants were the sureties on that bond. In October, 1928, the guardian filed his first annual account therein, showing receipts amounting to $2,420.91, and disbursements in the sum of $1,067.50, leaving a balance on hand of $1353.41. The guardian then petitioned the court to "fix the amount of such new or additional bond as this court may require". The account was duly settled, and the court made its order on October 15, 1928, that "said guardian give a new bond in the sum of $2,000.00 surety or $4,000.00 personal". No order was then or subsequently made exonerating the individual bondsmen or discharging the original bond. Pursuant to the order of court for an additional or new bond, the appellant, Fidelity & Deposit Company of Maryland, filed its bond in the estate on November 2, 1928, in the sum of $2,000. In a subsequent accounting it was determined that the guardian, William Barlow, had misappropriated the sum of $1758.30 belonging to the estate. On proceedings duly had, the guardian was removed and this respondent, Bank of America National Trust & Savings Association, was appointed and qualified as guardian of the estate of said incompetent in the place of William Barlow. Upon the trial of this case the court found that "the said (personal surety) bond was canceled and annulled and the said bondsmen G. Wilson and F. B. Edson were discharged from all future liability. . . . That said bond of G. Wilson and F. B. Edson is not in full force and effect and has been of no force and effect since the 7th day of November, 1928, as to any liability created since said time." It was stipulated that no other orders, notices or proceedings except those which are men-

tioned above were had in the matter of the estate affecting the original bond or purporting to discharge the bondsmen.

Unless the language of the court ordering that the guardian "give a *new* bond in the sum of $2,000.00" necessarily infers that the last-mentioned bond was to be furnished in lieu of the original bond and that it implies that the first bondsmen were thereby exonerated and the bond discharged, then there is no evidence to support the finding that the cross-defendants were discharged from their liability on their bond.

The sureties on the original bond did not apply to the court for an order discharging them from liability. No notice of a proposed discharge of those sureties was given. The court made no order discharging them. For the protection of the estate the Probate Code authorizes the discharge of the sureties of an existing bond upon the giving of a new bond when it appears that the discharge may be granted without injury, and only upon notice thereof. Section 1483 of the Probate Code provides that:

"The court may require a new bond to be given by a guardian whenever it deems it necessary; and when it appears that no injury can result therefrom to those interested in the estate, it may discharge the existing sureties from further liability, after such notice given as the court may direct." .

It has been held that when the code specifically requires "such notice given as the court may direct", the jurisdiction of the court depends on the giving of some notice, the nature of which may be determined by the court, and on the contrary, that the court may not then entirely dispense with notice. (*Olcese* v. *Superior Court of Kern County,* 210 Cal. 566 [292 Pac. 964].) With respect to notice regarding the appointment of a special administrator, it is there said:

"The requirement of Section 1412 of said code (of Civil Procedure) that such reasonable notice must be given cannot, by any stretch of construction, be held to mean that no notice whatever of the application for such appointment or of the hearing thereon shall be required."

The section referred to in the preceding quotation was subsequently changed by the adoption of section 461 of the Probate Code so as to specifically authorize "the appointment . . . at any time *without notice*". (*Evans* v. *Superior Court of Los Angeles County,* 215 Cal. 58, 66 [8 Pac. (2d) 467].)

■ It is suggested that article IX of the Political Code with respect to bonds of officers is made applicable to guardianship bonds and thereby automatically accomplishes the discharge of the sureties on the original bond herein by virtue of the filing of the new bond by the Fidelity & Deposit Company of Maryland. We think not. Section 981 of the Political Code declares that, "The provisions of this article apply to the bonds of receivers, executors, administrators and guardians." Section 970 of that code also provides that:

"Whenever any sureties on the official bond of any officer wish to be discharged from their liability, they and such officer may procure the same to be done if such officer will execute a new bond with sufficient sureties in like form, penalty, and conditions, and to be approved and filed as the original bond. Upon the filing and approval of the new bond such first sureties are exonerated from all further liability."

But in the present case the original sureties did not ask to be discharged from further liability on their guardianship bond. The provisions of sections 972–975 of the Political Code regarding the necessary procedure for obtaining the discharge of sureties from further liability were not complied with in this case. ■ Moreover, if it be deemed that the Political Code provides for the automatic discharge of sureties from further liability by the mere filing of a new bond regardless of notice or application therefor, those provisions are in absolute conflict with section 1483 of the Probate Code, which contemplates that an order of court to that effect will be made upon proceedings duly had upon such notice thereof as the court may direct. We are of the opinion these statutory provisions may be readily reconciled. But even though they be deemed to be in irreconcilable conflict, the section of the Probate Code will prevail for it is the latest expression of the legislature in that regard. The Political Code sections in question were enacted in 1872. Section 1803 of the Code of Civil Procedure, which was reenacted by the adoption of section 1483 of the Probate Code, became the law in 1880. In 50 C. J., page 1042, section 619, it is said with respect to conflicting statutes:

"Where two statutes are in apparent conflict, they should be so construed, if reasonably possible, as to allow both to stand and to give force and effect to each, and if it is not possible to reconcile them, the dates of their enactment will

be examined in determining the legislative intent, and effect given to the later one.''

For the reason that there is no evidence to support the finding and judgment to the effect that the cross-defendants, Wilson and Edson, were discharged from their liability on their guardianship bond, and that question was a valid issue in this case, it becomes necessary to reverse the judgment in that regard. The judgment holding the appellant, Fidelity & Deposit Company of Maryland, to be liable on its guardianship bond in the sum of $1758.30 is valid and should be affirmed.

The judgment is modified and the trial court is directed to also render judgment jointly against the cross-defendants, Wilson and Edson, in the sum of $1758.30. As so modified the judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 30, 1935.