[Civ. No. 15242.   First Dist., Div. One.   Dec. 12, 1952.]

Estate of ELIZABETH PAILHE, Deceased. RENE PIERRE PAILHE, Appellant, v. ALFRED PAILHE, as Administrator, Respondent.

Gus K. Burgren for Appellant. .

Matthew Koppel and James G. Flaherty for Respondent.

WOOD (Fred B.), J.—Rene Pailhe, one of the heirs of the decedent, has appealed from an order directing Alfred Pailhe, as administrator, to pay the latter's attorneys, respondents Matthew Koppel and James G. Flaherty, $1,000 on account of fees for extraordinary services rendered by them in a certain action brought by the administrator against Rene, and to pay the official reporter $124.80 for the transcript on appeal in that action.

As grounds for reversal, appellant claims: (1) No order prescribing notice of the hearing was made by court or judge, (2) no notice of hearing was given pursuant to section 1200 of the Probate Code, (3) no petition was filed by the applicants, (4) there was no evidence before the court to support the order, and (5) the reporter's fee was erroneously allowed.

(1) *The proceeding for the order appealed from was initiated by written notice of motion* by the attorneys, accompanied by the affidavit of one of them describing the extraordinary services. This notice stated that at a certain time and place the attorneys would make the indicated motion. The notice was addressed to Alfred, the administrator, and to Rene "and Messrs. Carl E. Brown, H. Jacobs and W. Dawson, his [Rene's] attorneys." There was no court order of any kind concerning notice.

Appellant invokes that provision of section 911 of the Probate Code which says that any attorney may apply to the court for an allowance upon his fees "upon such notice to the executor or administrator and to the persons interested in the estate as the court or judge thereof shall require." Appellant claims that in the absence of an order prescribing such notice, the entire proceeding was void.

The answer is that appellant appeared and participated at the hearing through his attorney, Carl E. Brown. Alfred

Pailhe, the administrator and the only other heir, attended and was personally present throughout the hearing.

At the outset of the hearing Brown said ''I am the attorney representing Mr. Pailhe, in the matter of the estate.'' It is clear from the context that he meant Rene Pailhe. The order made after that hearing recited that among those present was ''Carl E. Brown, attorney for Rene Pierre Pailhe, an heir at law, representing said heir in this proceeding.'' The attorney's act in appearing for Rene carried with it a presumption of due authority upon his part to do so. (*Voinich* v. *Rolleri*, 203 Cal. 379 [264 P. 240] ; 3 Cal.Jur. 647, Attorneys at Law, § 54.) Soon thereafter, Rene confirmed that presumption. September 27, 1951,* he filed a writing dated August 30, in which he declared over his signature : ''I hereby substitute G. K. Burgren as attorney for myself as an heir at law and party interested in the above entitled Estate and proceedings, in place and stead of Carl E. Brown, former attorney of record for me therein.''

By his voluntary appearance at the hearing appellant waived any defect there may have been in the giving of notice to him. It is like *Estate of Palm*, 68 Cal.App.2d 204, 213-214 [156 P.2d 62], in which it was held that an administrator's appearance and participation in a hearing on the merits rendered innocuous the failure to serve him with the citation required by section 1206 of the Probate Code. (See, also, *Estate of Pierce*, 28 Cal.App.2d 8, 11-12 [81 P.2d 1037] ; *Estate of Brainard*, 76 Cal.App.2d 850, 853-854 [174 P.2d 702] ; and *Estate of Reinhertz*, 82 Cal.App.2d 156, 161 [185 P.2d 858, 186 P.2d 755].)

Appellant relies upon *Olcese* v. *Superior Court*, 210 Cal. 566 [292 P. 964], and *Bank of America* v. *Fidelity & D. Co.*, 9 Cal.App.2d 687 [51 P.2d 472], as holding that failure to give notice as prescribed by law prevents a court from obtaining jurisdiction to proceed. The Olcese case involved an order appointing a special administrator without the notice prescribed by statute, indeed, without any notice whatsoever, the trial court having found, when making the appointment, that no notice was necessary. That bears no resemblance to our case, one in which a party who attends and participates at the hearing later raises the question of notice. In the Bank of America case, the reviewing court held that an order merely directing a guardian to give a new bond did not

---

*The hearing was held August 9 and the order filed August 15, 1951.

operate to exonerate the old bond upon the giving of the new. In interpreting that order, the court noted that the sureties on the original bond had not applied for an order of discharge, that no notice of a proposed discharge had been given, and that no order for discharge had been made. The court then directed attention to section 1483 of the Probate Code which authorizes discharge of sureties ''after such notice given as the court may direct,'' and quoted from the Olcese case to the effect that such a notice is jurisdictional. It is apparent that the facts of the Bank of America case render those remarks inapplicable to our case.

█ (2) *Appellant predicates lack of jurisdiction, also, upon a failure to give the notice prescribed by section 1200 of the Probate Code* ''in all cases in which notice is required and no other time or method is prescribed by law or by court or by judge.''

Appellant's appearance and participation at the hearing operated as a waiver of any objection he may have had, predicated upon asserted lack of notice, for the same reasons as those indicated in our discussion of his similar objection predicated upon section 911 of the Probate Code. He relies upon *Stiebel* v. *Roberts*, 42 Cal.App.2d 434 [109 P.2d 22]; *Guardianship of Carlon*, 43 Cal.App.2d 204 [110 P.2d 488]; *Security-First Nat. Bank* v. *Superior Court*, 1 Cal.2d 749 [37 P.2d 69]; and *Lilienkamp* v. *Superior Court*, 14 Cal.2d 293 [93 P.2d 1008]. But none of those cases is apt. None involves the waiver of a prescribed notice by the appearance and participation of the very person for whose benefit the notice was prescribed.

█ (3) *Appellant claims that only a ''petition'' could satisfy the jurisdictional requirements for the initiation of such a proceeding as this.* The statute says nothing about a ''petition.'' It says that an attorney who has rendered services to an executor or administrator may ''apply'' to the court for an allowance upon his fees. The written notice of motion filed in this case, and the accompanying affidavit upon which, in part, the motion was based, satisfied the requirements of the statute in this respect. Especially significant is section 1003 of the Code of Civil Procedure. It defines an ''order'' and declares that ''an application for an order is a motion.'' Section 1003 is made applicable by section 1233 of the Probate Code.

(4) *Appellant claims there was no evidence before the trial court* to support the order appealed from. A literal

reading of the reporter's transcript would indicate that this claim is true, in the sense that no witness was sworn and no testimonial or documentary evidence was formally introduced. While such informality in a proceeding which involves substantial rights is to be deplored, it does not necessarily follow that the resultant order must be reversed.

The record of the proceedings in the action in which the extraordinary legal services had been rendered was judicially cognizable by the trial court in view of the reference to those proceedings and that record made in the notice of motion and the supporting affidavit for allowance of attorney's fees. (*Estate of McSweeney,* 107 Cal.App.2d 140, 144 [236 P.2d 846], and cases cited.) The transcript of the hearing clearly shows that counsel for both sides understood and assumed that the court had that record before it for consideration. Counsel for the applicants said, among other things, "Representing the administrator, we filed a suit to set aside a Deed which had been given by Mrs. Elizabeth Pailhe, in her lifetime to one of her sons, and we filed that suit on behalf of the other son, as administrator of the estate. The suit was successful, and we have a judgment of the court after a trial by court, before the Honorable I. L. Harris." In response to a question asked by the court, appellant's counsel said he felt it would be just to allow the applicants something on account and wanted the court to be acquainted with the fact that an appeal had been taken in the other action. The court then said "At least he is entitled to some compensation for what he had already done, no' matter what the outcome is," and appellant's counsel replied "Surely, your Honor, but with those facts before your Honor, I have no——." Counsel for the applicants then said "May I acquaint your Honor with the file in the matter and show what the judgment indicates? The judgment indicates that we have secured a home," and orally described the nature, scope and extent of the legal work done. The court then asked Rene's counsel if he had "anything to say on this question of application for attorney fees" and he responded "Only that the attorney fees have not, at the present time—what I mean is, he hasn't enriched the estate at this time as long as the appeal is pending, and I feel that should be taken into consideration in anything your Honor grants," and the court said "Well, that is true. It isn't final yet. I think I will grant you $1000, on account. That will be without prejudice to any final fee."

■ It is clear, therefore, that despite the failure to introduce the record of the other action formally in evidence, counsel for appellant acquiesced in the use of the record in the argument of the motion and it seems equally clear that all parties and the trial court believed that the record was properly before the court. This situation is strikingly similar to that which obtained in *Mann* v. *Mann*, 76 Cal.App.2d 32 [176 P.2d 369]. There the reviewing court found that the record of certain divorce proceedings had been properly brought to the judicial notice of the trial court by the allegations of one of the pleadings. The court then added that, "though the record was not formally offered in evidence, counsel for appellant acquiesced in the use of the record in the argument of the pretrial motion to limit the issues, and it is manifest that all parties and the court believed that the record was properly before the court. This is indicated by the remarks of counsel for respondent near the close of the argument on the motion asking that the record should show that these proceedings were before the court and had been read and examined in passing upon the motion. The trial court at the time stated that respondent had offered the complete file of the divorce proceedings and that the record had been fully considered in passing upon the motion. No objection was made by the appellant to either of the statements of court or counsel and it is fair to assume that he acquiesced in these statements as to the course of procedure. The record thus shows that the trial court and both parties treated the record of the proceedings in the' divorce case as having been properly received in evidence on the hearing of the motion. When such is the state of the record in the trial court a reviewing court will not look for technical reasons to exclude from consideration any part of the record which was before the trial court." (Pp. 41-42; followed in *Walsh* v. *Walsh*, 108 Cal.App.2d 575, 578-579 [239 P.2d 472].)

■ "The knowledge of the court" being a form of evidence (Code Civ. Proc., § 1827), the trial court's knowledge of the record of the action in which the legal services in question were rendered supplied the evidential basis of the order allowing the applicants $1,000 on account. The absence of that record from the transcript upon this appeal would not of itself furnish a basis for reversing the order appealed from. That lack, at most, would mean that the

appellant had failed to furnish a basis for determining the soundness of his claim that the evidence did not support that order. ■ It happens, however, that we may take judicial notice of the record in the other action, upon the same basis that we took judicial notice of another action in *Estate of McSweeney, supra,* 107 Cal.App.2d 140, 142-144. In the instant case the record in the other action appears in the record upon Rene Pailhe's appeal to this court from the judgment rendered in that action, identified as Civil No. 15,056 upon the files of this court, decided September 12, 1952, and reported in *Pailhe* v. *Pailhe,* 113 Cal.App.2d 53 [247 P.2d 838]. Our examination of that record convinces us there was a sufficient basis in the evidence for the order in question.

■ (5) *As to the reporter's fee for the transcript on appeal in the other action,* we find no basis in law for its allowance in this proceeding.

Prior to the 1905 and 1909 amendments to sections 1616 and 1619 of the Code of Civil Procedure (now Prob. Code, §§ 910 and 911), ''the reasonable allowance for legal services was made by the probate court to the executor or administrator and could not be made to the attorney. The attorney employed by an executor or administrator to assist him in the execution of his trust had no claim that he could enforce against the estate either by action or in any other way. He was not a person interested in the estate. The amount of compensation fixed by the contract of the executor of an estate with his attorney for legal services to be rendered in settlement thereof was a matter of personal obligation on the part of the executor, or representative, with which the probate court had no concern. (*Estate of Kruger,* 143 Cal. 141 [76 P. 891].) Volume 11, California Jurisprudence, pages 1187, 1188, 1193, 1194, 1195, contains a full discussion of this question with numerous citations of authority directly holding that prior to the amendment of 1905 attorneys could not assert a demand against the estate of a deceased person, but were limited to their personal action against the executor or other representative of the estate who had employed them. This rule was changed by the amendment above noticed prior to the present transaction to the form in which it now exists by providing that attorney fees 'shall be allowed out of the estate.' (Code Civ. Proc., sec. 1619.)'' (*Chapman* v. *Pitcher,* 207 Cal. 63, 68 [276 P. 1008].)

The change of status thus given to the attorney by authorizing him to "apply to the court for an allowance upon his fees" to be "paid out of the estate" (§ 911) is necessarily limited by its terms to an application by an attorney for "his fees," for payment to him (not for the fees of a court reporter, for payment to the reporter) out of the funds of the estate. "The only case where an attorney may proceed independently, and maintain an action or an appeal, is for services rendered during administration of an estate as provided in section 911 of the Probate Code, formerly section 1616 of the Code of Civil Procedure." (*Stafford* v. *Superior Court*, 1 Cal.2d 321 at 324 [34 P.2d 998], decided prior to the 1951 addition of Prob. Code, § 1556.1.)

The question whether or not "fees," as used in section 911 of the code, include necessary and reasonable "expenses" paid or incurred by an attorney for an administrator, is not involved and, of course, is not decided upon this appeal.

The order appealed from is modified by striking therefrom the provision for payment of $124.80 to the official reporter and, as so modified, is affirmed. The parties will bear their own costs, respectively, upon this appeal.

Peters, P. J., and Bray, J., concurred.